IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


BILLY G. PANCOAST,                          06-CV-6116-BR

          Plaintiff,                        OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


RICHARD F. MCGINTY
McGinty & Belcher, P.C.
P.O. Box 12806
Salem, OR  97309
(503) 371-9636

          Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1024


1 - OPINION AND ORDER

**MICHAEL MCGAUGHRAN**
Office of the General Counsel
**TERRYE E. SHEA**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2143

       Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff Billy G. Pancoast seeks judicial review of the Social Security Commissioner's final decision in which he denied Pancoast's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.

     This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383.  Following a review of the record, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter for further administrative proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

     Pancoast initially applied for disability benefits in April 2000 due to chronic liver disease and alcohol-related cirrhosis and was granted benefits beginning October 12, 2000.  Tr. 15. These benefits ended in April 2003 when the Commissioner determined Pancoast was no longer disabled.  Tr. 15.

Pancoast again filed for DIB and SSI on June 16, 2003, alleging cirrhosis of the liver and asserting a disability onset date of June 1, 2003.  Tr. 14.  His application was denied initially and on reconsideration.  Tr. 14.  On May 23, 2005, an Administrative Law Judge (ALJ) held a hearing.  On June 14, 2005, the ALJ issued an opinion in which he found Pancoast was not disabled.  Tr. 14.

On September 16, 2005, the Appeals Council granted Pancoast's request for review, vacated the ALJ's decision, and remanded for further administrative proceedings.  Tr. 14, 71-73. In particular, the Appeals Council directed the ALJ to reassess Pancoast's residual functional capacity (RFC), to determine whether Pancoast retained transferrable job skills from past relevant work, and to obtain any new medical records or other necessary evidence.  Tr. 14-15, 71-72.

On December 15, 2005, the ALJ held a second hearing. Tr. 15, 376.  Pancoast and Vocational Expert (VE) Gail Vogel testified.  Tr. 381, 390.  Pancoast was represented by an attorney.  Tr. 378.  The ALJ issued his opinion on January 24, 2006, in which he found Pancoast is not disabled and, therefore, not entitled to DIB or SSI.  Tr. 16, 23.  That decision became the Commissioner's final decision on April 10, 2006, when the Appeals Council denied Pancoast's request for review.  Tr. 5-7.

## BACKGROUND

Born on December 26, 1950, Pancoast was 54 years old at the time of the hearing and is a high school graduate.  Tr. 16. Pancoast previously worked as a security guard and cannery worker.  Tr. 16, 100.  Pancoast has suffered a number of medical impairments including alcohol-related cirrhosis of the liver, Type II diabetes and obesity, joint and back pain, and bowel inconsistency.  Tr. 208, 257, 314.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.*

4 - OPINION AND ORDER

*Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla but less than a
preponderance; it is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Andrews v.
Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.
*Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The
Commissioner's decision must be upheld even if the "evidence is
susceptible to more than one rational interpretation." *Andrews,*
53 F.3d at 1039-40.  The court may not substitute its judgment
for that of the Commissioner.  *Batson,* 359 F.3d at 1193.


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
*See also* 20 C.F.R. §§ 404.1520(a), 416.920(a).  Each step is
potentially dispositive.

In Step One, the claimant is not disabled if the

5 - OPINION AND ORDER

Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(b).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, he must determine the claimant's RFC, which is an assessment of the sustained, work-related activities that the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.945(a). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform

work that he has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(e).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(e),(f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(f)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Pancoast had not engaged in substantial gainful activity since June 1, 2003, the onset of his most recent alleged disability. Tr. 22.

At Step Two, the ALJ found Pancoast's joint pain, back pain, and symptoms of deconditioning in conjunction with his obesity and "other impairments" are severe. Tr. 17, 22.

At Step Three, the ALJ found Pancoast's impairments did not

meet or equal the criteria of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 37.

At Step Four, the ALJ determined Pancoast retains the RFC to "perform a modified range of light exertion work activity." Tr. 20.  In addition, the ALJ found Pancoast is able to lift and to carry up to 20 pounds occasionally and 10 pounds frequently; able to stand and to walk at least four hours of an eight-hour workday; would benefit from a sit/stand option for at least half of a workday; can sit at least six hours of an eight-hour workday; can occasionally reach overhead, crouch, crawl, and climb stairs or ramps.  Tr. 20, 22.  The ALJ, nevertheless, found Pancoast is unable to return to past relevant work.  Tr. 20, 22.

At Step Five, the ALJ found Pancoast had transferrable skills from his past relevant work as a security guard.  Tr. 22. Based on the VE's testimony, the ALJ found Pancoast could perform jobs that exist in the national economy, including work as a "light exertion, semiskilled gate guard."  Tr. 22.  Thus, the ALJ concluded Pancoast is not disabled.  Tr. 23.


## DISCUSSION

Pancoast contends the ALJ erred in his January 24, 2006, opinion by improperly considering lay-witness evidence offered by Pancoast's mother and nephew; by improperly assessing medical evidence when determining Pancoast's RFC; and by relying on

8 - OPINION AND ORDER

erroneous VE testimony.

**I.    Lay-Witness Evidence.**

Pancoast contends the ALJ did not consider evidence submitted by Pancoast's nephew, David Pancoast, and improperly evaluated evidence submitted by Pancoast's mother, Dorothy Pancoast.

The ALJ must provide reasons germane to each lay witness before rejecting the testimony of the witness, but the ALJ is not required to consider or to address nonprobative information. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  *See also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)(court referred to written statements submitted to the ALJ as lay-witness testimony).  The ALJ may discount lay testimony that conflicts with medical evidence.  *Lewis*, 236 F.3d at 511.

**A.    David Pancoast's Written Statements.**

David Pancoast submitted a "Functional Report Adult - Third Party" form in which he discussed his observations of Pancoast. Tr. 173.  David Pancoast spent approximately three days per week with Pancoast.  Tr. 173.  David Pancoast opined Pancoast's various limitations affected his ability to work, sleep habits, energy level, and concentration and limited him from performing physical activities.  Tr. 174-78.

The ALJ did not address David Pancoast's statements in his opinion.  The Commissioner concedes this was error because the

ALJ must expressly provide reasons germane to a lay witness for not considering lay-witness evidence. *See Lewis*, 236 F.3d at 511. The Commissioner, however, asserts the ALJ committed harmless error. The Commissioner maintains David Pancoast's testimony did not suggest Pancoast had limitations in excess of those included in the ALJ's evaluation of Pancoast's RFC, and, in any event, David Pancoast's statements would not have altered the ALJ's conclusion. The Commissioner notes an ALJ's decision will not be reversed for harmless error. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The Court, however, does not agree this error was harmless. The Ninth Circuit has held an ALJ's disregard of lay testimony is a consistent ground for reversal and not mere harmless error in most cases. *See Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006)(a reviewing court cannot find harmless the ALJ's failure to consider lay evidence unless "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

In his opinion, the ALJ expressly found Pancoast's statements concerning his ability to work were "not fully credible." Tr. 19. David Pancoast's statements, however, would support Pancoast's testimony if credited. Tr. 380-89. When an ALJ finds a claimant's testimony concerning his limitations to be unreliable, the ALJ must specifically identify the testimony that

10 - OPINION AND ORDER

is credible and the testimony that undermines the claimant's complaints. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ had considered David Pancoast's statements, the ALJ's conclusions as to the credibility of Pancoast's testimony concerning his limitations may have been affected.

Accordingly, the Court concludes the ALJ erred when he failed to consider David Pancoast's statements, and this error was not harmless.

**B.  Dorothy Pancoast's Written Statements.**

Pancoast contends the ALJ erred by not properly evaluating written statements provided by Dorothy Pancoast. Tr. 134-45.

Dorothy Pancoast stated Pancoast has trouble with his knees and hips, but he can prepare meals, dust the house, vacuum, and take out the trash. Tr. 140-41, 145. The ALJ considered these statements in his decision and "found Ms. Pancoast's statement[s] fully credible." Tr. 19.

Pancoast, however, maintains the ALJ erred when he failed to address expressly other statements made by Dorothy Pancoast and "selectively adopted" statements by Dorothy Pancoast. For example, Pancoast contends the ALJ should have considered Dorothy Pancoast's statements that there are social activities Pancoast can no longer do and that Pancoast has trouble sleeping and has to take one-hour naps in the afternoon. Tr. 135-36, 140.

The Court notes Pancoast mischaracterizes one of these

11 - OPINION AND ORDER

statements:  In response to the question whether there are
activities Pancoast enjoys but can no longer do, Dorothy Pancoast
appears to have stated that there are not any such activities.
Tr. 136.

In any event, the record reflects the ALJ expressly and
fully credited all of Dorothy Pancoast's statements.  Tr. 19.
Accordingly, the Court concludes the ALJ did not err when he
evaluated Dorothy Pancoast's written statements.

**II.  The ALJ's RFC Assessment.**

Pancoast also contends the ALJ erred by improperly
characterizing the opinion of occupational therapist Diane Barker
when he assessed Pancoast's RFC.

**A.    Diane Barker's Evaluation.**

On April 13, 2005, occupational therapist Diane Barker,
OTR/L, conducted a physical-capacity evaluation pursuant to a
request from Pancoast's attorney to test Pancoast's projected
tolerances over an eight-hour workday with normal breaks.
Tr. 355-62.  Barker found Pancoast could lift five pounds
frequently, 15 pounds occasionally, and 25 pounds intermittently
as well as frequently carry 15 pounds for a distance of ten feet
and infrequently carry 30 pounds for a distance of ten feet.
Tr. 355.  Barker also concluded Pancoast could perform at a
"light physical demand level" for up to four hours per day and
could perform at a "sedentary-light physical demand level" for an

12 - OPINION AND ORDER

entire eight-hour day.  Tr. 358.

**B.    Pancoast's RFC.**

After reviewing the medical evidence, the ALJ concluded:

> . . . . I find [Pancoast] retains the
> residual functional capacity to perform a
> modified range of light exertion work
> activity as reported after the physical
> capacities evaluation performed in April
> 2005.  He is able to lift and carry up to 20
> pounds occasionally and 10 pounds
> frequently.  He is able to stand and walk at
> least four hours of an eight hour workday.
> He would benefit from a sit/stand option for
> at least one half of the workday.  He is
> able to sit at least six hours of an eight
> hour workday.  He is unable to engage in
> repetitive grasping or pinching.  He is able
> to engage in occasional (no frequent)
> overhead reaching, crouching, crawling, or
> climbing stairs or ramp.

Tr. 20.

Pancoast contends the ALJ's conclusion was inconsistent with
Barker's April 13, 2005, evaluation on which the ALJ expressly
relied.  Tr. 20.  In particular, Pancoast points out that Barker
stated Pancoast could perform "light physical" work for only four
hours a day and "sedentary-light physical" work for eight hours a
day.  Tr. 358.  The ALJ, however, found Pancoast could "sit at
least six hours of an eight hour workday."  Tr. 20.

The Court finds the ALJ's conclusion is an accurate
reflection of Barker's evaluation.  Barker reported Pancoast
could sit for "120 minutes at a time; 6 hours per day projected."
Tr. 355.  The ALJ reached a conclusion that is substantially the

13 - OPINION AND ORDER

same as Barker's evaluation and is not contradicted by other medical evidence in the record.  Tr. 20.

Accordingly, the Court finds the ALJ did not mischaracterize certain medical evidence when he assessed Pancoast's RFC.

**III. The VE's Testimony.**

Pancoast contends the VE erred in his testimony regarding jobs available to Pancoast in the national economy, and the ALJ erred when he relied on that testimony.

The VE testified a hypothetical person with the limitations attributed to Pancoast could perform the job of "gate guard." Tr. 391.  The ALJ asked the VE whether "gate guard" was "a subset of security guard, sort of a lesser part of the whole job of security guard".  Tr. 392.  The VE responded:  "It's -- yes. That's -- you know, [gate guards] just guard the entrance of a building or grounds.  And its just an element of security work. It's just a -- you know, it's a security gate guard as opposed to a regular security guard."   Tr. 392.

Pancoast asserts the VE erred when he testified "gate guard" is a subset of "security guard" because "security guard" has an entry separate from "gate guard" in the Dictionary of Occupational Titles (372.667-034, 372.667-030).  Pancoast, therefore, contends the ALJ's conclusion that Pancoast could work as a gate guard was erroneous because the VE's characterization of the job "contradicts the DOT" without explanation.

14 - OPINION AND ORDER

The Court disagrees.  Pancoast challenges the VE's testimony and the ALJ's reliance on it only as to the DOT classification of a security guard and its relationship to a gate-guard position. The ALJ, however, did not expressly conclude "gate guard" is actually a subset of "security guard."  The ALJ only found Pancoast was able to perform work as a gate guard, and gate guard positions are available and exist in the national economy. Tr. 21.  This conclusion is in accordance with the VE's testimony that a hypothetical person with Pancoast's limitations could work as a gate guard.  Tr. 391-92.

In summary, the record reflects the VE testified a person with Pancoast's limitations could work as a gate guard and gate-guard jobs exist in the national economy.  Tr. 21-22, 391-92. Accordingly, the Court finds the ALJ did not err when he relied on the VE's testimony as to positions available in the national economy that a hypothetical person with Pancoast's limitations could perform.

## REMAND

The decision whether to remand for further proceedings or for the payment of benefits is a decision within the discretion of the Court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  This decision turns on the likely utility of further proceedings.  *Id.* at 1179.  The Court may "direct an award of

15 - OPINION AND ORDER

benefits where the record has been fully developed and where
further administrative proceedings would serve no useful
purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed." *Harman*, 211 F.3d at 1178. The
Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a
single question: Whether the ALJ would have to award benefits if
the case were remanded for further proceedings. *Id.* at 1178 n.2.
When it is not clear whether the ALJ would be required to award
benefits if the improperly rejected evidence were credited, the
Court has discretion as to crediting the evidence. *See Connett
v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003).

As noted, the Court concludes the ALJ erred by not
considering significant, probative evidence from lay witness
David Pancoast. The effect, if any, that David Pancoast's
testimony would have on the ALJ's determination of disability is
unclear under the circumstances of this case. Thus, the Court
determines further administrative proceedings are necessary.

16 - OPINION AND ORDER

## **CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 1st day of June, 2007.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

17 - OPINION AND ORDER